UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| BARBARA A. BUSH, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 4:10-cv-0013-TWP-WGH |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration | ) ) ) ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff, Barbara Bush ("Bush"), seeks judicial review of the final decision of Defendant, Michael J. Astrue, Commissioner of Social Security ("Commissioner"), denying Bush's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 423, 1381. For the reasons explained in this entry, the Commissioner's decision must be **REMANDED** for further proceedings.

## I. BACKGROUND

### A. Procedural History

On February 23, 2006, Bush filed an application for DIB and SSI due to fibromyalgia, restless leg syndrome, thyroid disease, heart disease, osteoarthritis, degenerative disc disease, asthma, bipolar disorder, neuropathy, diabetes, epilepsy, and reflux disease ("GERD") (Tr. 124). According to Bush, these conditions limited her ability to work because she cannot: stand for more than two hours; grip or hold onto things; sit for more than 30 minutes before needing to lie down; and climb stairs or walk far distances. Additionally, Bush has difficulty concentrating and

remembering instructions (Tr. 125). Bush alleged that her disability began on September 20, 2005.[1] The Agency denied her applications initially and upon reconsideration, and Bush requested a hearing (Tr. 85-94). On September 11, 2008, an Administrative Law Judge ("ALJ") held a hearing. Bush, two medical experts, and a vocational expert ("VE") testified at the hearing (Tr. 551-93).

In an April 28, 2009 decision, the ALJ found that Bush retained the residual functional capacity ("RFC") to perform a range of simple repetitive work at the sedentary exertional level with occasional public contact. Further, the ALJ found that Bush was limited to "no climbing of ladders, ropes or scaffolds, and only occasional balancing, stooping, kneeling, crouching, and crawling." Moreover, the ALJ found that Bush should avoid working at unprotected heights, around dangerous machinery, and should not have concentrated exposure to fumes, gases, dust, and poor ventilation (Tr. 22). Considering Bush's age, education, work experience and RFC, the ALJ relied on the testimony of a vocational expert to find that Bush could perform a significant number of jobs in the national economy and, therefore, was not disabled (Tr. 27). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review (Tr. 7-9). Pursuant to 42 U.S.C. § 405(g), Bush filed this action for judicial review of the Commissioner's final decision.

**B.    Bush's Medical/Personal History**

Bush was born in 1963, making her 46 years old at the time of the ALJ's decision (Tr. 26). Bush completed tenth grade and subsequently earned a GED (Tr. 561). From 1991 to 2002,

---

[1]Sometimes timing is everything: Bush received an unfavorable decision from an ALJ on the prior day September 19, 2005. This prior decision was not appealed, thus becoming a final decision.

Bush worked almost 50 hours a week as an assistant manager at Kentucky Fried Chicken, where she supervised employees, handled money, and presided over drive-thru operations (Tr. 125). Bush stated that she stopped working in 2002 due to her medical conditions (Tr. 125).

Medical evidence pre-dating Plaintiff's alleged disability onset date reflects a history of diffuse pain, restless leg syndrome, carpal tunnel syndrome, asthma, hypothyroidism, degenerative disc disease in the spine, anxiety, nausea, and reflux disease dating back to 2000 (Tr. 162-80, 225-27, 336, 344-47, 358-64, 372-89).

On September 7, 2005, Bush began treatment with general practitioner Teiichi Takedai, M.D., who saw Bush approximately once a month until June 2008. His treatment notes reflect that he was treating her with medication for anxiety, reflux disease, fibromyalgia, asthma exacerbated by tobacco abuse, and diabetes (Tr.308-15, 406-10). In 2006 and 2007, Bush was also treated for emotional issues, attending numerous outpatient mental health treatment sessions through Quinco Behavioral Health Systems (Tr. 181-187, 206-16, 422-28, 436-43, 467-72).

On April 17, 2006, Bush underwent an internal medicine examination with Robert MacWilliams, M.D. (Tr. 292-97). Bush reported that she had monthly seizures, without loss of consciousness, but that she still drove (Tr. 292). Bush was pleasant, appeared comfortable during the examination, and was appropriately dressed and groomed with no evidence of personal hygiene neglect. Bush had a normal gait and denied problems related to coughing, shortness of breath, wheezing, nausea, abdominal pain, bowel movements, and dizziness. Bush reported that she could perform basic activities of daily living. Moreover, her memory and intellectual functioning were normal (Tr. 293). The results of Bush's physical examination were entirely normal, including clear lungs, soft and non-tender abdomen, no tenderness or muscle

spasm, good strength, normal sensation, good range of motion and normal straight leg raising (Tr. 293-95). The doctor noted that Bush's subjective grip strength was "markedly higher than that seen by dynamometer" and was "subjectively" normal (Tr. 295). Bush was able to make a fist, pick up coins, and button clothing using both hands. Bush was able to walk on heels or toes, stand on either leg, and perform a half-squat without difficulty (Tr. 295). Dr. MacWilliams opined that Plaintiff could perform light to medium exertion work for 8 hours a day that did not require driving, dangerous conditions, climbing, or unprotected heights (Tr. 296).

State agency physicians reviewed Bush's medical records in May and August 2006 and opined that Bush could not climb ladders, ropes, or scaffolds and could only occasionally climb ramps and stairs, but did not have any other exertional or postural limitations (Tr. 274-80). In May 2006, a state agency psychologist also reviewed the records and opined that Bush had moderate limitations in remembering and carrying out detailed instructions and maintaining attention and concentration for extended periods of time. In all other categories, Bush was deemed "not significantly limited" (Tr. 255-56).

On July 10, 2006, Bush underwent an evaluation with resident Golda M. James, M.D., supervised by rheumatologist Rafael Grau, M.D. She was referred by Dr. Takedai after complaints of muscle and joint aches and pains (Tr. 200-02). Bush complained of pain at a level nine on a scale of one to ten and informed Dr. Grau that she had been diagnosed with, among other things, fibromyalgia in 2002 and osteoarthritis in 2003 (Tr. 200). Bush was in no apparent acute distress during the examination (Tr. 201). Bush's neurological examination was normal and she exhibited good range of motion and no joint swelling. Dr. Grau noted that Bush was experiencing tenderness in her fingers, elbows, shoulders, and lumbar spine (Tr. 201). Dr. Grau

4

found Bush's hips, knees, and ankles to be normal (Tr. 201). Dr. Grau diagnosed Bush with, among other things, fibromyalgia (Tr. 202).

In November 2006, Dr. Grau completed a physical capacities evaluation, opining that Bush could sit for two hours at a time and up to six hours total in an eight-hour day. Further, Bush could stand for one hour at a time, walk for 30 minutes at a time, and stand and walk for two hours total during an eight-hour day (Tr. 188). Dr. Grau also opined that Bush could frequently lift and carry up to ten pounds, and occasionally lift and carry up to 20 pounds. Further, Bush had no limitations using her hands, arms, or feet (Tr. 188-89). Bush could occasionally reach, but could not bend, squat, crawl, or climb (Tr. 189). Dr. Grau opined that Bush's reported need to lie down in bed for two hours a day was not credible. He also opined that Bush's pain would impede her ability to concentrate and, therefore, she "would need to take breaks throughout the workday" (Tr. 189-90).

On December 3, 2006, Dr. Takedai completed a physical capacities evaluation for Bush. In doing so, he opined that although Bush could sit for two hours at a time, she could only sit for three hours total during an eight-hour day. Further, he opined that she could stand for 30 minutes at a time and walk for 30 minutes at a time; however, she could only stand and walk for a total of 30 minutes during an eight-hour day (Tr. 191). He opined that Bush could never carry light weights under five pounds; could not bend, squat, crawl, or climb; would have difficulty sustaining attention throughout an eight-hour day; and would need to lie down in bed for about two hours per day (Tr. 191-92). Dr. Takedai's treatment notes from December 2006 through June 2008 reflect that he continued to see Plaintiff on a monthly basis for a variety of issues, including shortness of breath, coughing, pain and weakness in her legs, nausea, stomach pain,

5

and anxiety (Tr. 486-505).

**C.     The Hearing**

Bush alleged that her inability to work was due to pain that required her to sit down often and problems with her hands that caused her to drop things (Tr. 565). She also reported a 23-year history of breathing problems (although she still smoked two packs of cigarettes per day) and residual problems from failed carpal tunnel surgery (Tr. 563, 567-69). Bush testified that she "usually" stayed in bed all day. However, she also reported babysitting her seven-year-old granddaughter on weekends, driving 15 to 20 miles at a time to pick up her granddaughter, cooking simple meals such as chili, and working on puzzles for 20 minutes at a time (Tr. 562, 569-72).

Bush testified that hot baths and a TENS unit helped relieve her pain and she denied any adverse side effects from her medications (Tr. 561, 563, 566). Bush estimated that she could stand for only two or three minutes at a time and sit for no more than 20 minutes at a time (Tr. 566-67). According to Bush, on a "good day," she can walk 30 consecutive steps, whereas on a "bad day" she can only walk five consecutive steps. Bush testified that she has roughly three good days a week (Tr. 567). Bush further testified that if she is forced to mop, sweep, or lift anything heavier than 10 pounds, she will literally "throw up" due to the pain (Tr. 566). The ALJ questioned her about a recent medical record, which stated that Bush was "very busy cleaning house, and caring for children." (Tr. 573). Bush responded that, for her, cleaning and caring for the children only entailed washing dishes, picking things up and throwing them away from the couch, and lying down and napping with her three-year-old grandson (Tr. 573-74). Bush admitted doing a "little bit" of sweeping (Tr. 574).

6

Psychologist Jack Thomas testified at the hearing as a medical expert. He opined that the medical evidence established a moderate depressive disorder that would likely restrict Plaintiff to simple repetitive work that required only occasional contact with the public (Tr. 575-77). Lee Fischer, M.D., also testified at the hearing, and reviewed the evidence relating to Bush's physical impairments. He noted multiple impairments, including degenerative disc disease, restless leg syndrome, and a history of diabetes. However, he appeared to express some skepticism about Bush's fibromyalgia diagnosis due to the lack of sufficient trigger point tenderness upon examinations (Tr. 581-82, 584). Dr. Fischer opined that Bush would be limited to light exertion work that required only occasional postural movements, did not require climbing, working at heights or around dangerous machinery, and allowed her to avoid concentrated exposure to environmental irritants (Tr. 583).

Vocational expert ("<u>VE</u>") Tim Bobrowski also testified at the hearing. The ALJ asked the VE whether he could identify any jobs that could be performed by an individual with Bush's age, education, and work experience who was limited to simple, repetitive work at the sedentary level of exertion that required only occasional contact with the public and occasional postural movements and did not require climbing, working at unprotected heights, working around hazardous machinery, or concentrated exposure to environmental irritants (Tr. 588). The VE testified that such an individual would be able to perform at least 6,000 jobs in the State of Indiana (Tr. 589). Additional facts are added below as needed.

## II. DISABILITY AND STANDARD OF REVIEW

To be eligible for SSI and DIB, a claimant must have a disability under 42 U.S.C. § 423. "Disability" means the inability to engage in any substantial gainful activity by reason of any

7

medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423 (d)(1)(A). In determining whether a claimant is disabled, the ALJ employs a five-step process set forth in 20 C.F.R. § 404.1520(a)(4):

1. If the claimant is employed in substantial gainful activity, the claimant is not disabled.

2. If the claimant does not have a severe medically determinable physical or mental impairment or combination of impairments that meets the duration requirement, the claimant is not disabled.

3. If the claimant has an impairment that meets or is equal to an impairment listed in the appendix to this section and satisfies the duration requirement, the claimant is disabled.

4. If the claimant can still perform the claimant's past relevant work given the claimant's residual functional capacity, the claimant is not disabled.

5. If the claimant can perform other work given the claimant's residual functional capacity, age, education, and experience, the claimant is not disabled.

The burden of proof is on the claimant for the first four steps, then it shifts to the Commissioner at the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

The Social Security Act, specifically 42 U.S.C. § 405(g), provides for judicial review of the Commissioner's denial of benefits. When the Appeals Council denies review of the ALJ's findings, the ALJ's findings become findings of the Commissioner. *See, e.g., Henderson ex rel. Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999). This Court will sustain the ALJ's findings if they are supported by "substantial evidence." *Id.* (citation omitted). In reviewing the ALJ's findings, the Court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the ALJ." *Id.* (citation and internal quotations omitted). While a

8

scintilla of evidence is insufficient to support the ALJ's findings, the only evidence required is "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citations and internal quotations omitted).

### III.  DISCUSSION

**A.     The ALJ's Finding**

Tracking the disability framework, the ALJ made findings at each of the five steps.  At step one, the ALJ found that Bush has not engaged in substantial gainful employment since her alleged onset date of September 20, 2005 (Tr. 17).  Bush does not contest this finding.  At step two, the ALJ found that Bush "has the following severe impairments: low back pain, diabetes, [GERD], chronic obstructive pulmonary disease, obstructive sleep apnea, hypertension, carpal tunnel syndrome, obesity, fibromyalgia, hypothyroidism, a history of petit mal seizures, and depression . . ." (Tr. 17).  Bush does not contest this finding.  At step three, the ALJ found that Bush does not meet or equal a listed impairment (Tr. 17).  Bush does not contest this finding.  In between step three and step four, the ALJ is required to make an RFC determination.  In doing so, the ALJ stated the following:

> [T]he claimant has the residual function capacity to perform sedentary work. 'Sedentary work' is defined as involving lifting no more than 10 pounds at a time; occasionally lifting or carrying articles like docket files, ledgers, and small tools; and walking and standing are required only occasionally (no more than two hours in an eight hour workday). (20 CFR 404.1567(a) and 416.967(a); Social Security Ruling 83-10). The claimant is further limited to no climbing of ladders, ropes or scaffolds, and only occasional balancing, stooping, kneeling, crouching, and crawling. The claimant should avoid working at unprotected heights or around dangerous machinery. She should avoid concentrated exposure to fumes, gases, dust, and poor ventilation. Mentally, the claimant is limited to simple and repetitive tasks and occasional contact with the general public.

(Tr. 22).  On numerous grounds, Bush contests this RFC finding.  At step four, the ALJ

9

determined that Bush cannot perform her past relevant work (Tr. 26). Bush does not contest this finding. Finally, at step five, the ALJ denied Bush's claim on the basis that she can perform jobs that exist in significant numbers in the national economy (Tr. 27). Bush argues that this finding is erroneous because it is premised on the faulty RFC determination.

**B.    Bush's Arguments on Appeal**

Bush claims that the ALJ's RFC determination was fatally flawed, thus infecting his final step-five determination that Bush could perform jobs that exist in significant numbers in the national economy. Bush claims that the ALJ erred in three distinct ways, failing to: (1) properly evaluate the opinion of rheumatologist Rafael Grau that Bush would need breaks throughout the day; (2) provide logical reasons for rejecting the opinion of Teiichi Takedai, Bush's treating physician; and (3) properly evaluate Bush's credibility. Bush contends that any of these reasons justify remand. Each argument is addressed separately below.

*1.    Rheumatologist Rafael Grau*

An ALJ has a duty to consider all of the medical opinions in a Social Security disability case. 20 C.F.R §§ 404.1527(b), 416.927(b). Although the ALJ noted that his RFC finding generally aligned with Dr. Grau's assessment that Bush could perform at least sedentary work, the ALJ did not specifically address Dr. Grau's statement that Bush would need to take breaks throughout the day. Bush argues that the ALJ's silence on this issue is tantamount to a tacit rejection of Dr. Grau's opinion without explanation. Bush claims that this error was material, as evidenced by the VE's testimony that "[Bush] would be required to be on task 90% of the workday . . . If her unscheduled breaks require her to miss more than 44 minutes out of the 8 hour day, then she would not be able to do . . . any . . . competitive work." (Tr. 590). Thus, the

ALJ's purported rejection of Dr. Grau's opinion without explanation, Bush argues, warrants remand.

The Court respectfully disagrees. Breaks are customary in the workplace and Dr. Grau never opined that Bush necessitated "unscheduled breaks" above and beyond what is customary. Also, Dr. Grau implicitly endorsed the view that Bush could work a full day, noting on the physical capacities evaluation that she could sit for six hours and stand for two hours of an eight-hour workday (Tr. 188). Thus, the ALJ did not squarely reject Dr. Grau's opinion, and Dr. Grau's statement is not necessarily inconsistent with the ALJ's RFC finding. Consequently, remand is not warranted for this reason.

### 2. *Dr. Teiichi Takedai*

The ALJ rejected Dr. Takedai's opinion that Bush cannot sit, stand, and walk in combination for eight hours in an eight-hour workday. An ALJ is required to articulate his assessment of the evidence to assure a reviewing court that he has considered the important evidence so that the court can trace the path of his reasoning. See *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *see also Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 486 (7th Cir. 2007) (ALJ must build "a logical bridge from the evidence to the conclusion."). The ALJ's primary rationale for rejecting Dr. Takedai's opinion was that it was "not consistent with the objective medical evidence of record." (Tr. 25).

Bush argues that the ALJ's rejection was erroneous because it failed to account for Bush's fibromyalgia, a disorder characterized by unverifiable symptoms and a lack of objective diagnostic criteria. *See Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) (recognizing that fibromyalgia is "a common, but elusive and mysterious, disease, much like chronic fatigue

11

syndrome . . ."). Because Bush's symptoms were only subjective, Bush argues, it was erroneous for the ALJ to reject Dr. Takedai's opinion.

The Court is not persuaded. Fibromyalgia, albeit unique due to its lack of empirically authenticating features, does not obviate the claimant's need to furnish evidence of actual disability. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998) ("whatever the diagnosis – tarsal tunnel of the ankles and feet, or fibromyalgia throughout the body – [claimant] must provide sufficient evidence of actual disability . . under the terms of the Social Security Act."). Moreover, it is worth noting that fibromyalgia was only one of Bush's diagnoses, and most of her other conditions would presumably be accompanied by objective medical findings. Here, the ALJ rejected Dr. Takedai's opinion because it was not consistent with other objective medical evidence, such as Dr. MacWilliams' extensive findings and observations, described above. Simply stated, the Court was able to trace the path of the ALJ's reasoning and substantial evidence supports the ALJ's determination. Consequently, remand is not warranted for this reason.

### 3. *Credibility Determination*

Last, Bush argues that the ALJ made material errors in evaluating her credibility. Because an ALJ's credibility determination is entitled to special deference, courts will overturn an ALJ's credibility finding only when it is "patently wrong." *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010). Citing an assortment of evidence, the ALJ determined that Bush was not fully credible. In doing so, however, the ALJ relied on three pieces of highly dubious evidence. In relevant part, the ALJ wrote:

> It is noted that there are some discrepancies in the claimant's reports. In June 2007, she alleged being a victim of extreme domestic violence in a relationship that lasted 27 years (Ex. K at 1), yet in October 2007, denied any physical abuse (Ex. O at 7). She reported not sleeping well in October 2007 (Ex. O at 7), but was sleeping well the following month (Ex. O at 4) and in January 2008 (Ex. O at 2). There are also conflicting reports regarding her education. In December 2006, the claimant reported that she finished high school (Ex. F at 146), but in March 2006 she reported having ten years of high school education (Ex. 1F at 146), as she did during her testimony during the hearing. Although the inconsistent information provided by the claimant may not be the result of conscious intention to mislead, nevertheless the inconsistencies suggest that the information provided by the claimant <u>generally may not be entirely reliable</u>.

(Tr. 20) (emphasis added). The Court agrees with Bush that these are not real discrepancies. *See Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006) (credibility determinations are ordinarily binding, "[b]ut not if the finding is based on errors of fact or logic."). The ostensibly differing statements related to domestic violence are easily reconciled. Bush reported that she was a victim of domestic violence during her marriage, but indicated that she had never suffered abuse at the hands of her family during childhood. Bush's assessment of her sleep is also not a real discrepancy. As any human knows, sleep can be fickle, vacillating between good and bad. Thus, Bush's statement that her sleeping improved within a month is not confusing. Finally, Bush's education is well-settled; she finished 10th grade and later earned a GED.

Bush does not contest the entire basis of the ALJ's credibility determination. In finding Bush's subjective complaints of disability to be less than fully credible, the ALJ also evaluated: the location and duration of Bush's alleged symptoms; the absence of EEG evidence of epileptic activity; Bush's normal gait and easy movement during examinations; Bush's normal strength, sensation, reflexes, and range of motion; the absence of neurological deficits; the absence of any reported medication side effects; the treatment modalities Plaintiff's used other than medication;

13

Bush's reported daily activities, including babysitting her granddaughter; and the physician opinions of record. Bush does not dispute the ALJ's reasoning on these fronts.

At bottom, the central issue can be distilled to a single question: Do some mistakes in an ALJ's extensive credibility assessment taint his overarching conclusion that the claimant is not fully credible? The Court believes that under these unique circumstances – where the ALJ expressly stated that three unsound pieces of evidence "generally" undermined Bush's reliability – the answer is "yes." On this point, the Seventh Circuit has offered useful guidance. *See, e.g., Allord*, 455 F.3d at 821 ("The administrative law judge based his judgment call on a variety of considerations but three of them were mistaken. Whether he would have made the same determination had he not erred in these respects is speculative."); *Morgan v. Astrue*, 2010 WL 3452765, at *3 (7th Cir. Aug. 2, 2010) (remanding case, noting that ALJ's credibility finding was based on at least four pieces of unsound evidence).

Here, too, the Court finds that the ALJ based his credibility finding partially on unsound reasoning. Whether the ALJ would have made the same overarching finding without the three mistakes is inherently speculative, particularly given the ALJ's statement these considerations "generally" affected Bush's reliability. Moreover, credibility was a material issue, if not the centerpiece of this case. After all, the VE testified that, in essence, if Bush is fully credible, then "she would not be able to do . . . any . . . competitive work." (Tr. 590). Accordingly, remand is warranted. This will allow the ALJ to reassess Bush's credibility without relying on dubious reasoning.

## IV. CONCLUSION

Whether Bush is entitled to benefits remains to be determined. However, for the reasons stated herein, the case is **REMANDED** for further proceedings consistent with this entry.

SO ORDERED: 12/16/2010

_____
Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Copies to:

**Thomas E. Kieper**
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov,pearlie.wadlington@usdoj.gov,lin.montigney@usdoj.gov

**Timothy J. Vrana**
tim@timvrana.com